

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 1, 1947

Hon. George H. Sheppard
Comptroller of Public Accounts
Austin, Texas          Opinion No. V-174

Re:  Proper distribution of
     intestate's estate under
Dear Sir:                submitted facts.

        You have requested an opinion from this Department as to the distribution that should be made in the administration of the estate of C. C. Mitchell, deceased, in view of the following facts:

        C. C. Mitchell, an only child, had never married.  He died intestate, leaving neither father nor mother, nor grandparents.  His paternal grandmother had two children by a second marriage.  Both of these children are dead.  One of them left nine children; the other, four.  These thirteen "half" first cousins are intestate's only relatives on the paternal side.  On the maternal side, twelve first cousins survive intestate.  Eight descend from one maternal aunt; four, from another; and one, from a third.

        An examination of the various Articles of Title 48, "Descent and Distribution," R.C.S., reveals several provisions that bear on a determination of the problem at hand.  Article 2570 provides the course and manner of descent of the property of an intestate who leaves no husband or wife.  The first three sections of Article 2570 prescribe the distribution to be made if the intestate is survived by children or their descendants, or by parents or one of them, or by brothers or sisters or their descendants.  Section 4 of Article 2570 is applicable to the facts of this case and reads as follows:

            "If there be none of the kindred aforesaid, then the inheritance shall be divided into two moieties, one of which shall go to the paternal and the other to the maternal kindred, in the following course:  To the

grandfather and grandmother in equal por-
tions, but, if only one of these be liv-
ing, then the estate shall be dividied in-
to two equal parts, one of which shall go
to such survivor, and the other shall go
to the descendant or descendants of such
deceased grandfather or grandmother.  If
there be no such descendants, then the
whole estate shall be inherited by the
surviving grandfather or grandmother.  If
there be no surviving grandfather or grand-
mother, then the whole of such estate shall
go to their descendants, and so on without
end, passing in like manner to the nearest
lineal ancestors and their descendants.
Act March 18, 1848, p. 129; P.D. 3419; G.
L. vol. 3, p. 129; Act Jan. 18, 1840, p.
132; G.L. Vol. 3, p. 306."

Article 2573 makes the following special provisions for
kindred of half-blood:

"In cases before mentioned, where the
inheritance is directed to pass to the col-
lateral kindred of the intestate, if part
of such collateral be of the whole blood,
and the other part of the half blood only
of the intestate, those of half blood shall
inherit only half so much as those of the
whole blood; but if all be of the half-
blood they shall have whole portions. Acts
1848, p. 129; P.D. 3424; G.L. Vol. 3, p.
129."

Article 2577 is likewise determinative and reads as fol-
lows:

"Where the intestate's children, or
brothers and sisters, uncles and aunts,
or any other relations of the deceased
standing in the first and same degree a-
lone come into the partition, they shall
take per capita, namely: by persons, and,
when a part of them being dead and a part
living, the descendants of those dead have
right to partition, such descendants shall
inherit only such portion of said property
as the parent through whom they inherit
would be entitled to if alive.  Acts 1887,
p. 49; G.L. vol. 9, p. 847."

None of the other provisions of Title 48 are relevant; therefore, a determination of the proper distribution of the C. C. Mitchell estate must be made from the above quoted articles as construed by our courts.

In 1878, in McKinney v. Abbott, 49 Tex. 371, the Supreme Court of the State of Texas construed what was then the fourth subdivision of Section 2 of the act "To regulate the descent and distribution of intestates' estates," (Paschal's Dig., Art. 3419.), now Section 4 of Article 2570, R.C.S. Some of the heirs in that case were descendants of the paternal grandfather and grandmother; the others were descendants of the maternal great grandfather and great grandmother. The court held that the estate left by the intestate should be divided into two equal moieties or portions, and one given to the descendants of the grandfather and grandmother on the father's side and the other portion given to the descendants of the great grandparents on the mother's side. The court in reaching this conclusion reasoned as follows:

"The obscurity and uncertainty of this subdivision of said section arise out of the fact that after the inheritance is directed to be divided into two moieties, one to go to the paternal and the other to the maternal kindred of the intestate, the statute in that section makes no further reference to the two estates thus created out of the inheritance, but proceeds to state how the estate, as if there were but one, shall descend and be inherited, concluding with the direction that it shall go to the 'nearest lineal ancestors, or their descendants, or to such of them as there be.'

"If this had been said to be the course of each one of the two estates, made by dividing the inheritance into two moieties, it would have been more plain as to what was meant. Still, it is more reasonable that such was its meaning, than that there should be no division of the inheritance when the kindred happened to be nearer on one side than on the other, which, it must have been known, would very often happen."

The court also analyzes the historical background of the legislation and concludes:

"With the explanation thus furnished
. . . there could be no doubt but that,
in the contingency contemplated by this
fourth subdivision, the moieties of the in-
heritance should go to the paternal and
maternal kindred respectively, although
the kindred of one side might be more re-
mote than those upon the other, so long as
any such existed to take the moiety allot-
ed to each side." (Emphasis added).

In Witherspoon v. Jernigan, 76 S.W. 445, the
Supreme Court again considered this same provision which
at that time was subdivision 4 of Article 1688, Rev. St.
1895. The court cited the McKinney case with approval
and held that under this subdivision an estate is prop-
erly divided into two equal parts, "each of which for
the purposes of distribution became a separate estate,
one to go to the maternal and the other to the paternal
kindred". (Emphasis added)

The provisions of Section 4 of Article 2570,
R.C.S. have not been changed since these decisions were
rendered; therefore, it is mandatory that the property
first be divided into two equal parts, one to go to the
relatives on the paternal side, the other to the maternal
kindred. The general statutory rules of distribution are
then applicable to each of the two estates so created.
Witherspoon v. Jernigan, supra; Peters v. Clancy, Civ.
App. 192 S.W. 2d 937.

Article 2577 (previously quoted) defines the
class of persons who take a per capita share in the dis-
tribution of an intestate's property. The court in the
Witherspoon case, supra, points out that a literal con-
struction of the phrase "or any other relations of the
deceased standing in the first and same degree" (emphasis
added). This result is avoided by substituting the word
"or" for the word "and". The phrase then reads "in the
first or same degree". Various authorities are cited to
sustain this method of construction, and the court finds
further support for the result by tracing the history of
previous legislative enactments. See also Peters v.
Clancy, supra. Here the paternal kindred are all of the
same degree. Therefore, on coming into partition they
take a per capita share of the "paternal estate." Article
2573 (previously quoted), dealing with the shares to be
accorded those of half-blood, in no way impedes this result;

for as to the "paternal estate" all are "of half-blood and they shall have whole portions". Each paternal half-cousin is thus entitled to 1/13 of the estate alloted to the paternal kindred or 1/26 of the original estate.

The maternal kindred are likewise of the same degree. By virtue of Article 2577, they will take a per capita share on coming into the partition. The share to which each cousin is entitled is 1/12 of the estate allotted to the maternal kindred or 1/24 of the original estate.

### SUMMARY

Where the nearest surviving kindred of an intestate are the descendants of the maternal and the paternal grandparents, the estate of the intestate must be divided into two equal parts, one of which goes to the paternal kindred and the other to the maternal kindred. Section 4 of Article 2570, R.C.S.; McKinney v. Abbott, 49 Tex; 371; Witherspoon v. Jernigan, 76 S.W. 445; Peters v. Clancy, 192 S.W. 2d 937. The general statutory rules of distribution are then applicable to each of the two estates so created. Paternal half-cousins, being of the same degree, and there being no other kindred on the paternal side, take an equal per capita share in the estate allotted to paternal kindred. Article 2577, R.C.S.; Witherspoon v. Jernigan, supra; Peters v. Clancy, supra, Article 2573, R.C.S. The maternal kindred likewise being all of the same degree take equal shares of the estate allotted to the maternal kindred.

Yours very truly

APPROVED: May 1, 1947

*Price Daniel*

ATTORNEY GENERAL

MP/lh

ATTORNEY GENERAL OF TEXAS

By *Marietta Payne*

Mrs. Marietta Payne
Assistant